# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

ROBERT WAYNE LAMBERT,   )
            )
    **Petitioner,**   )
            )
vs.          )  **Case No. 00-CV-313-TCK-FHM**
            )
RANDY WORKMAN, Warden,[1]  )
            )
    **Respondent.**   )

## OPINION AND ORDER

Before the Court is Petitioner's amended petition for writ of habeas corpus (Dkt. # 58). Petitioner Robert Wayne Lambert (hereinafter "Petitioner" or "Lambert") is a state inmate represented by counsel. Respondent filed a response (Dkt. # 59) to the amended petition. Petitioner filed a reply (Dkt. # 60). For the reasons discussed below, the Court finds the amended petition should be denied. The Court notes that since the amended petition replaces and supersedes the original petition, the original petition (Dkt. # 16) shall be declared moot.

## BACKGROUND

Pursuant to 28 U.S.C. § 2254(e)(1), the historical facts as found by the state court are presumed correct. Following review of the record, including the relevant transcripts and exhibits,[2]

---

[1] Petitioner is incarcerated at the Oklahoma State Penitentiary ("OSP"). Currently, the Warden of OSP is Randy Workman. Pursuant to Rule 2(a), *Rules Governing Section 2254 Cases*, the proper Respondent in this matter is Randy Workman. The Clerk shall substitute Randy Workman as Respondent in place of Marty Sirmons. See Fed. R. Civ. P. 25(d).

[2] In resolving the claims raised by Petitioner in his amended petition, the Court reviewed the following records: Comp. Tr. Trans. Vol. II, dated June 25, 1991 (containing transcript of Jackson v. Denno hearing at 211-343); Comp. Tr. Trans. Voir Dire, dated May 2, 1996, and Vols. I and II, dated May 6, 7, and 8, 1996; Tr. Trans. Vols. I-V, dated Nov. 14-25, 1996, Pending Mots. H'rg Tr. dated Nov. 15, 1996; Original Record (O.R.) Vol. 12 of 14 (containing jury instructions for competency trial), Vol. 13 of 14 (containing relevant defense motions), and Vol. 14 of 14 (containing jury instructions for trial); videotaped

this Court finds that the factual summary provided by the Oklahoma Court of Criminal Appeals

("OCCA") in its order resolving Petitioner's first appeal is adequate and accurate. The OCCA

summarized the facts, as follows:

> Laura Lee Sanders and Michael Houghton were sitting in Sanders' car outside a Tulsa bar during the early morning hours of October 6, 1987, when they were approached by two men, later determined to be Scott Allen Hain and Robert Wayne Lambert. Hain and Lambert were in the parking lot of the bar considering whether to rob a nearby house. Hain and Lambert forced their way into Sanders' car by threatening Houghton with a knife.
> Hain drove the car away from the bar, then stopped and robbed Houghton at gunpoint. When Houghton resisted the robbery, he was tied up and put into the trunk of the car. A short while later, they stopped again and put Sanders in the trunk as well.
> After robbing Houghton and getting the keys to his truck, the Appellant and Hain went back to the bar to get Houghton's truck. Appellant drove the truck away from Tulsa toward Sand Springs, eventually driving down a rural Creek County roadway. Hain followed in Sanders' car with Sanders and Houghton still in the trunk.
> The two men took some things from Sanders' car and put them in the truck. One of them cut the gas line to the car and set it on fire by putting lighted newspaper and a blanket under the dripping fuel line. Houghton and Sanders were banging on the trunk and yelling. Appellant and Hain left the area, but returned a short time later to see if the fire was burning well.
> Prior to leaving the state, the two men stopped at a friend's house in Jennings and left in his garage a bag of things which they had taken from Sanders' car. They traveled to Wichita, Kansas in Houghton's truck. After spending the five hundred and sixty-five ($565.00) dollars taken from Houghton and Sanders, the two returned to Tulsa, where they were apprehended on the evening of October 9, 1987.[3]

Lambert v. State, 888 P.2d 494, 497 (Okla. Crim. App. 1994) (hereinafter "Lambert I").

Based on those events, Lambert was tried and convicted by a jury of two counts of Murder

in the First Degree, two counts of Kidnaping, two counts of Robbery with Firearms, two counts of

Larceny of an Automobile, and one count of Arson in the Third Degree, in Creek County District

---

confession of Robert Lambert, dated October 12, 1987; photographs entered into evidence during trial.

[3] Lambert and Hain were not arrested until October 12, 1987.

Court, Case No. CRF-1987-240.[4] Petitioner was represented at trial by attorney Russell C. Miller. At the conclusion of a two-stage trial, the jury recommended sentences of death for each count of Murder, ten (10) years for each count of Kidnaping, one hundred (100) years for each count of Robbery with Firearms, twenty (20) years for each count of Larceny of an Automobile and fifteen (15) years for the Third Degree Arson conviction. The trial court sentenced Petitioner in accordance with the jury's recommendation.

Petitioner perfected a direct appeal in the OCCA.  Represented by attorneys Mark Barrett and William H. Luker, Petitioner raised twenty-six (26) claims. The OCCA remanded the case for a retroactive post-examination competency hearing.  After being found competent, Petitioner filed a supplemental brief in the OCCA raising an additional ten (10) claims. By corrected Order filed December 28, 1994, in Case No. F-88-388, see Lambert I, the OCCA affirmed the judgment of the trial court as to the convictions and sentences for Kidnaping, Robbery with Firearms, Larceny of an Automobile, and Third Degree Arson.  However, because Petitioner's jury was instructed on first degree felony murder, a crime not charged in the information, the convictions for Murder (Counts I and II) were reversed and remanded for a new trial.

Petitioner was retried in 1996. The State filed an amended information charging Petitioner with two counts of First Degree Malice Murder and, in the alternative, First Degree Felony Murder. Prior to retrial of the murder charges, the trial court conducted a competency trial. The jury found Lambert competent to stand trial.  At the conclusion of Petitioner's second jury trial on the murder

---

[4]     Petitioner's co-defendant, Scott Alan Hain, was tried separately and was also sentenced to death for the murders of Houghton and Sanders.  Hain was executed on April 3, 2003.

charges, the jury returned a general verdict of first degree murder. He was again sentenced to death

on each count.  Petitioner was represented during his second trial by attorney Mark Barrett.

Petitioner appealed to the OCCA.  Represented by attorney Kristi L. Christopher, Petitioner

raised twenty (20) claims.  By Order filed April 14, 1999, in Case No. F-96-1567, the OCCA

affirmed Petitioner's convictions and death sentences.  Lambert v. State, 984 P.2d 221 (Okla. Crim.

App. 1999) (hereinafter "Lambert II").

Next, Petitioner filed a petition for writ of *certiorari* in the United States Supreme Court.

On January 10, 2000, that request was denied. Lambert v. Oklahoma, 528 U.S. 1087 (2000).

Petitioner requested post-conviction relief. The OCCA denied the request.  Lambert v. State, No.

PCD-1998-739 (Okla. Crim. App. 2000) (unpublished).

On December 14, 2000, Petitioner filed his federal petition for writ of habeas corpus (Dkt.

# 16).  By Order filed August 13, 2002, following issuance of Atkins v. Virginia, 536 U.S. 304

(2002) (holding that executions of mentally retarded criminals were "cruel and unusual

punishments" prohibited by the Eighth Amendment), this habeas action was held in abeyance to

allow Petitioner to pursue a second application for post-conviction relief to challenge his eligibility

for his sentences of death due to mental retardation.  By order filed May 29, 2003, in Case No. PCD-

2002-974, the OCCA granted post-conviction relief and remanded the case for a jury determination

on mental retardation.  See Lambert v. State, 71 P.3d 30 (Okla. Crim. App. 2003).   On December

7, 2005, after a Creek County jury determined that Petitioner is not mentally retarded, the OCCA

found that the mental retardation trial was marred by factual and legal errors and, rather than remand

the case for "yet another court proceeding," determined that Petitioner is mentally retarded, granted

post-conviction relief, and vacated and modified Petitioner's two death sentences to two sentences

4

of life imprisonment without the possibility of parole. Lambert v. State, 126 P.3d 646 (Okla. Crim. App. 2005).

By Order filed November 2, 2006 (Dkt. # 57), this Court lifted the stay in this matter, appointed attorney Mark Henricksen to represent Petitioner, and directed Petitioner to amend his petition in light of the sentence modification entered by the OCCA. On November 29, 2006, Petitioner filed his amended petition (Dkt. # 58). He identifies fifteen (15) claims, as follows:

Ground 1:     Mr. Lambert's felony murder convictions are barred by the prohibition against double jeopardy because Mr. Lambert had already been convicted for the underlying felony.
              A.     Multiple prosecutions.
              B.     Multiple punishments.

Ground 2:     The evidence presented at trial was insufficient to sustain the first-degree murder convictions under the requirements of the Eighth and Fourteenth Amendments of the United States Constitution and under Article 2, §§ 7 and 9 of the Oklahoma Constitution.
              A.     The only type of robbery that qualifies as a predicate for first-degree felony murder is robbery with a dangerous weapon.
              B.     A BB gun is not a firearm.
              C.     A BB gun can be a dangerous weapon if it is used in a manner which may cause death or great bodily harm.
              D.     Under the facts of this case, robbery with an imitation firearm does not qualify as one of the enumerated felonies in Okla. Stat. tit. 21, § 701.7(B), and cannot be used to support the first-degree murder convictions.
              E.     The instructions were inaccurate and misleading.
              F.     Mr. Lambert's first-degree murder convictions must be reversed because they rested on an invalid theory.

Ground 3:     Mr. Lambert's first degree murder convictions were obtained in violation of Okla. Stat. tit. 21, § 11(A) (1991) and should be reversed with instructions to dismiss because the murders were incident to the same course of conduct and committed to achieve the same objective as the arson charge Petitioner was convicted of in 1988.

5

Ground 4:      The trial court committed reversible error in the competency trial and the murder trial by admitting Petitioner's confession into evidence. Such error violated his rights under the Sixth, Eighth, and the Fourteenth Amendments of the United States Constitution and Article 2, Section 7, 9, and 20 of the Oklahoma Constitution.

Ground 5:      The trial court erred in refusing to declare a mistrial based on the State's egregious and repeated misconduct during the examination of State's witness Dr. Goodman.

Ground 6:      Mr. Lambert was deprived of effective assistance of counsel.
               A.     Trial counsel was ineffective for failing to move for a change of venue.
               B.     Sixth Amendment claims based on matters outside the trial record and request for evidentiary hearing in accordance with Rule 3.11.

Ground 7:      The trial court erred by allowing prejudicial repetition of the description of the bodies and the crime scene, admitting gruesome and irrelevant crime scene photographs, and allowing the State to call a victim's family member during first stage for the purpose of evoking sympathy.
               A.     Repetitive testimony describing the appearance of the "charred" bodies.
               B.     Gruesome photographs.
               C.     Family member as a witness.
               D.     Cumulative error.

Ground 8:      The trial court committed reversible error by failing to instruct on second-degree felony murder because of evidence that the homicide occurred in the course of a robbery which was not a robbery with a dangerous weapon.

Ground 9:      The trial court erred by failing to allow individual voir dire during jury selection.

Ground 10:     The jury's finding that Mr. Lambert was competent to stand trial was not reasonably supported by the evidence; therefore, his conviction should be reversed because he was later tried while incompetent.

Ground 11:     Irrelevant and highly prejudicial evidence was introduced during Mr. Lambert's competency trial which so infected the trial with unfairness the resulting verdict was obtained in violation of the Eighth and Fourteenth Amendments to the United States Constitution and Article 2, §§ 7 and 9 of the Oklahoma Constitution.

Ground 12:  The confession was inadmissible at the competency hearing for the reason that its probative value for purposes of establishing competency was substantially outweighed by the danger of unfair prejudice.  Its admission consequently violated Petitioner's right to due process of law.

Ground 13:  Improper injection at Mr. Lambert's competency trial of lay opinion as to Mr. Lambert's competency to stand trial so infected the trial with unfairness as to deprive Mr. Lambert of due process under the Fourteenth Amendment of the United States Constitution and Article 2, § 7 of the Oklahoma Constitution.

Ground 14:  The court's finding that Mr. Lambert was competent to stand trial is erroneous because the court was never required to determine if Mr. Lambert had a rational and factual understanding of the proceedings against him. Accordingly, his rights under the Sixth, Eighth, and Fourteenth Amendments of the United States Constitution and Article 2, §§ 7, 9, and 20 of the Oklahoma Constitution have been violated.

Ground 15:  The accumulation of errors in this case so infected the trial with unfairness that Petitioner was denied due process of law violation [sic] of his rights under the Fourteenth and Eighth Amendments.

Dkt. # 58.   In response to the amended petition, Respondent asserts that Petitioner's claims are either not cognizable in these proceedings or do not justify relief under 28 U.S.C. § 2254(d). See Dkt. # 59.

## ANALYSIS

### A. Exhaustion

Before addressing the claims raised in the petition, the Court must determine whether Petitioner meets the exhaustion requirement of 28 U.S.C. § 2254(b) and (c).  See Rose v. Lundy, 455 U.S. 509, 510 (1982). With the exception of one part of ground 3, Respondent concedes and the Court finds that the exhaustion requirement is satisfied in this case. The unexhausted portion of ground 3 lacks merit and shall be denied pursuant to 28 U.S.C. § 2254(b)(2).

**B.  Evidentiary hearing**

In his amended petition, Petitioner requests an evidentiary hearing on the issues of ineffective assistance of counsel for failing to request a change of venue and the denial of counsel's motion to voir dire potential jurors individually.  In response, Respondent asserts that Petitioner has failed to make the requisite showings to obtain an evidentiary hearing.  See Dkt. # 59 at 86-88.

Petitioner states that he sought and was denied an evidentiary hearing in state court.  (Dkt. # 58 at 124).  Therefore, the AEDPA's limitations on evidentiary hearings, 28 U.S.C. § 2254(e)(2), do not apply.  See Michael Williams v. Taylor, 529 U.S. 420 (2000); Miller v. Champion, 161 F.3d 1249, 1253 (10th Cir. 1998).  Under pre-AEDPA standards, Petitioner is entitled to an evidentiary hearing if his allegations, if true and not contravened by the existing factual record, would entitle him to habeas relief.  Miller, 161 F.3d at 1253 (citing Medina v. Barnes, 71 F.3d 363, 368-69 (10th Cir. 1995)).  After considering Petitioner's allegations, the Court finds they are either contravened by the existing factual record and/or would not, in any event, entitle him to habeas relief.  Accordingly, Petitioner's request for an evidentiary hearing shall be denied.

**C.  State law claims are not cognizable**

In grounds 2 and 11, Petitioner alleges that his convictions violate Okla. Const. art. 2, §§ 7 and 9.  In grounds 4 and 14, he alleges his convictions violate Okla. Const. art. 2, §§ 7, 9, and 20. In ground 13, he alleges a violation of Okla. Const. art. 2, § 7.  In ground 3, he asserts a violation of Okla. Stat. tit. 22, § 11. Some of these grounds also include claims of a federal constitutional violation. To the extent the referenced claims assert violations of Oklahoma law or the Oklahoma Constitution, the claims shall be denied because they are not cognizable on federal habeas corpus review.  A federal habeas court has no authority to review a state court's interpretation or application

8

of its own state laws. Estelle v. McGuire, 502 U.S. 62, 67-8 (1991) (emphasizing that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions). Instead, when conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. Id.; 28 U.S.C. § 2241. Petitioner's state law claims are not cognizable in this federal habeas corpus proceeding, and shall be denied on that basis without further analysis.

**D. Claims adjudicated by the OCCA on direct appeal**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions. Under the AEDPA, when a state court has adjudicated a claim a petitioner may obtain federal habeas relief only if the state decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 402 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001). When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner. See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002). Furthermore, the "determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). In this case, with the exception of a portion of ground 3, the

OCCA adjudicated Petitioner's habeas corpus grounds of error on direct appeal. Therefore, those claims shall be reviewed pursuant to § 2254(d).

### 1. Issues based on competency proceeding

#### a. Erroneous admission of confession (grounds 4 and 12)

As his fourth proposition of error, Petitioner complains that his confession obtained by Tulsa Police on October 12, 1987, was not knowingly obtained and the admission of the confession in the competency trial and subsequently at trial violated the Sixth, Eighth, and Fourteenth Amendments. The record reflects that after Petitioner's first trial, the OCCA remanded the matter for a retrospective post-examination competency determination. During that competency trial, defense counsel moved to suppress the confession on the ground that Petitioner did not knowingly and intelligently waive his rights. On June 25, 1991, the trial court held a Jackson v. Denno[5] hearing and found that Petitioner's confession had been knowingly and voluntarily made. Therefore, defense counsel's motion to suppress was denied and the confession was admitted at the retrospective competency trial. In Lambert I, the OCCA found that the videotaped confession was properly admitted at the retrospective competency hearing. See Lambert I, 888 P.2d at 499. After the OCCA reversed and remanded the murder convictions for retrial, the trial court held another competency trial in May 1996 prior to the retrial of the murder charges in November 1996. Defense counsel argued again that the confession was inadmissible. The parties asked the trial court judge to review the record from the previous Jackson v. Denno hearing. The trial court judge refused the parties' request and required them to make offers of proof. See Comp. Tr. Trans. at 98-99, 101-09. After

---

[5]   Jackson v. Denno, 378 U.S. 368, 376 (1964) (holding that when a defendant challenges the voluntariness of a confession, the voluntariness issue should be decided by a separate hearing).

hearing the offers of proof and the parties' arguments, the trial court judge ruled that the confession was admissible. Id. at 109. On direct appeal, the OCCA concurred with its earlier opinion and held that the trial court did not err in admitting the confession at the competency hearing. Lambert II, 984 P.2d at 230.

As his twelfth proposition of error, Petitioner complains that his confession was inadmissible at the competency hearing because its probative value for the purpose of establishing competency was substantially outweighed by the danger of unfair prejudice in violation of due process.  On direct appeal, the OCCA rejected this claim, stating that the videotaped confession "gave the jury an example of Lambert's ability to communicate, which was relevant to the issues before the jury. Moreover, this Court found this evidence relevant in Lambert's 1991 retrospective competency hearing. The trial court did not abuse its discretion in allowing the video to be played for the jury." Lambert II, 984 P.2d at 230.

While it is clear that an involuntary confession is inadmissible, Jackson v. Denno, 378 U.S. 368 (1964), it was not "unreasonable" for the OCCA to determine that Petitioner's confession was voluntary. "A defendant's confession is involuntary if the government's conduct causes the defendant's will to be overborne and 'his capacity for self-determination critically impaired.'" United States v. McCullah, 76 F.3d 1087, 1101 (10th Cir. 1996) (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 225-26 (1973)). "In determining whether the defendant's will was overborne in a particular case, the court examines 'the totality of all the surrounding circumstances-both the characteristics of the accused and the details of the interrogation.'" Id. (quoting Schneckloth, 412 U.S. at 226). Relevant factors "include the age, intelligence, and education of the suspect; the length of the detention and questioning; the use or threat of physical

11

punishment; whether <u>Miranda</u> safeguards were administered; the accused's physical and mental characteristics; and the location of the interrogation." <u>United States v. Perdue</u>, 8 F.3d 1455, 1466 (10th Cir. 1993). In addition, the court must "consider the conduct of the police officers." <u>Id.</u>

The record reflects that the trial court judge afforded the parties the opportunity to make offers of proof concerning Petitioner's ability to understand that he had waived his constitutional rights prior to talking to the police.  After hearing the parties' arguments, the trial court ruled that the confession was admissible.  As discussed in more detail in Part D(2)(d) below, the evidence presented by the State supported that ruling.

Furthermore, introduction of Petitioner's videotaped confession was not so lacking in probative value that its admission violated due process.  This Court has viewed the videotaped confession and finds the evidence was highly relevant to the contested issue of Petitioner's competency. In addition, the jury was instructed that the only issue before it was whether Petitioner was competent and not whether he was guilty of the charged offenses.  <u>See</u> Instruction Nos. 4 and 10 (O.R. Vol. 12 of 14 at 2164, 2170). The Court concludes that Petitioner has failed to establish entitlement to relief under 28 U.S.C. § 2254(d) on his claims challenging the admission of his videotaped confession at the competency trial.

### b. *Erroneous admission of prejudicial testimony (ground 11)*

In ground 11, Petitioner complains that during his competency trial, highly prejudicial evidence of other crimes and bad acts was admitted in violation of the Eighth and Fourteenth Amendments.  The OCCA rejected this claim, holding that:

> Lambert failed to object to this evidence at trial and has waived review for all but plain error. The evidence elicited was relevant and probative to the issue of Lambert's competence to stand trial. It related directly to Dr. Goodman's evaluation of Lambert's mental state. Admission of evidence of other crimes was not plain error and we decline to grant relief on this basis.

Lambert II, 984 P.2d at 231 (footnotes and citations omitted).

The Tenth Circuit Court of Appeals has found "no practical distinction" between the formulations of plain error used by the OCCA and the federal due-process test, requiring reversal when an error "so infused the trial with unfairness as to deny due process of law." Thornburg v. Mullin, 422 F.3d 1113, 1125 (10th Cir. 2005) (quoting Estelle v. McGuire, 502 U.S. 62, 75 (1991)). Because the OCCA applied the same test required for a due process determination, this Court defers to its ruling unless it "unreasonably appli[ed]" that test. Id. (citing 28 U.S.C. § 2254(d)). A proceeding is fundamentally unfair under the Due Process Clause if it is "shocking to the universal sense of justice." United States v. Russell, 411 U.S. 423, 432 (1973).

The Court finds that the OCCA did not unreasonably apply the due-process test. Introduction of Dr. Goodman's testimony concerning Petitioner's social and criminal history was not so lacking in probative value that its admission violated due process. As determined by the OCCA, the testimony was relevant to Dr. Goodman's evaluation of Petitioner's competency, and the jury was instructed to consider the evidence only for the purpose of deciding that issue. In addition, evidence of bad acts was presented by Petitioner's own witnesses. See Comp. Tr. Trans. at 114-15, 256. The Court concludes that Petitioner has failed to establish entitlement to relief under 28 U.S.C. § 2254(d).

### c. *Insufficient evidence of competence (ground 10)*

Ground ten is a challenge to the sufficiency of the evidence presented at the competency hearing. Petitioner argues that since the jury's finding of competency was not reasonably supported by the evidence, he was forced to stand trial while he was incompetent. See Dkt. # 58 at page 121 of 156. On direct appeal, the OCCA cited Cooper v. Oklahoma, 517 U.S. 348 (1996) (holding that a defendant is deemed competent to stand trial unless he proves by a preponderance of the evidence that he is incompetent), and held that "[t]he record amply supports a finding that Lambert was competent to stand trial under the preponderance of the evidence standard." Lambert II, 984 P.2d at 230-31.

Sufficiency of the evidence is a mixed question of law and fact. Under 28 U.S.C. § 2254(d)(1) and (d)(2), a habeas court asks whether the facts are correct and whether the law was properly applied to the facts. See Maynard v. Boone, 468 F.3d 665, 673 (10th Cir. 2006); Hamilton v. Mullin, 436 F.3d 1181, 1194 (10th Cir. 2006); see also Hale v. Gibson, 227 F.3d 1298, 1335 n.17 (10th Cir. 2000) (noting precedent has investigated sufficiency of the evidence both as a legal question and as a factual question). This Court defers to any determination of factual issue by the state court due to the presumption of correctness afforded by § 2254(e). Fields v. Gibson, 277 F.3d 1203, 1221 (10th Cir. 2002). The presumption of correctness can only be overcome by "clear and convincing" evidence that the defendant was incompetent at the time of trial. Bryan v. Gibson, 276 F.3d 1163 (10th Cir. 2001). Evidence of mental retardation may be considered in determining competence. However, "[m]entally retarded persons frequently know the difference between right and wrong and are competent to stand trial." Atkins v. Virginia, 536 U.S. 304, 318 (2002).

14

The jury's finding that Petitioner was not incompetent is a finding of fact that is presumed correct. Thus, in this habeas proceeding Petitioner must present "clear and convincing" evidence to rebut the presumption of correctness. Petitioner has failed to establish by clear and convincing evidence that the jury erred in finding him competent to stand trial. The jury heard the testimony of Dr. Thomas Goodman, a psychiatrist, who described his numerous encounters with Petitioner. See Comp. Tr. Trans. at 277-363. After reviewing Petitioner's social history and his history of encounters with the criminal justice system, coupled with the results of numerous psychological exams and evaluations, Dr. Goodman stated for the jury his opinion that Petitioner knows and understands the charges against him and that Petitioner was very able to cooperate with his attorney. Id. at 313. The State also presented four (4) employees of the Oklahoma Department of Corrections who stated opinions that based on observing Petitioner during the years he had been in DOC custody, Petitioner was competent to stand trial. See id. at 237, 240, 244, 249. After reviewing the testimony presented at the 1996 competency trial, the Court finds that Petitioner has failed to rebut with clear and convincing evidence the presumption of correctness afforded the jury's finding of fact that Petitioner was not incompetent. Although conflicting testimony was presented, the jury saw the witnesses and could assess their credibility. The jury heard sufficient evidence to conclude that Petitioner was competent to stand trial.

Under the AEDPA, a challenge to the sufficiency of the evidence must establish that no "rational trier of fact" could have found Petitioner competent by a preponderance of the evidence. Cf. Jackson v. Virginia, 443 U.S. 307, 319 (1979) (applying "beyond a reasonable doubt" standard to claim challenging sufficiency of the evidence presented at trial). The Court cannot conclude that the OCCA unreasonably applied Supreme Court precedent in denying Petitioner's challenge to the

sufficiency of the evidence, nor can the Court conclude that the jury's factual determination was unreasonable "in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Petitioner is not entitled to habeas corpus relief on this claim.

### d. Improper use of lay opinion at competency hearing (ground 13)

In ground 13, Petitioner alleges that his right to due process was violated by the improper injection of lay opinion at his competency hearing. Petitioner complains that four (4) employees of the Oklahoma Department of Corrections were allowed to testify that he was competent. Citing Okla. Stat. tit. 12, § 2701 (governing admissibility of lay opinion testimony), and McGregor v State, 885 P.2d 1366 (Okla. Crim. App. 1995), the OCCA determined that under state law, the admission of the lay testimony was not error because "the State's witnesses' testimony was rationally based on their perceptions and aided the trier of fact." Lambert II, 984 P.2d at 231. Furthermore, the OCCA noted that the witnesses stated they found Petitioner to be competent; they did not specifically state that he was competent to stand trial. Id.

As discussed above, a purported error of state law does not support habeas corpus relief. Estelle v. McGuire, 502 U.S. 62, 67-8 (1991) (emphasizing that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions). Petitioner argues, however, that the erroneous application of state law has resulted in a due process violation. The Court disagrees with Petitioner's assessment. Petitioner offered his own lay witnesses who testified that he was incompetent. Specifically, Petitioner's kindergarten and first grade teacher, Carol Cutsinger, testified that Petitioner experienced learning difficulties and had behavioral problems at school. See Comp. Tr. Trans. at 113-14. In addition, Luther Grisso, an investigator for defense counsel, gave his lay opinion that Petitioner was not competent to stand trial. Id. at 230. Petitioner's

sister, Sharon Hanson, testified that her brother was not competent to stand trial.  Id. at 261.  In contrast, each of the DOC employees described the extent of his contact with Petitioner and opined that Petitioner was competent based on their contact with him.  That testimony served to provide insight into Petitioner's day-to-day behavior while in custody in the years leading up to Petitioner's retrial.  Thus, the testimony was relevant and did not render Petitioner's competency trial fundamentally unfair.  Petitioner is not entitled to habeas corpus relief on this ground of error.

### e. Erroneous standard used to determine competence (ground 14)

As his fourteenth ground of error, Petitioner complains that the finding of competence was erroneous because the trial court never determined that he had a rational and factual understanding of the proceedings against him.  The OCCA rejected this claim, citing Dusky v. United States, 362 U.S. 402 (1960), and finding that Oklahoma's "competency standard is constitutional and comports with *Dusky*."  Lambert II, 984 P.2d at 231.

In Dusky, 362 U.S. at 403, the Supreme Court defined competency as whether the accused "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and whether he has a rational as well as factual understanding of the proceedings against him."  Oklahoma's competency statute requires a "qualified forensic examiner" to examine the accused to determine: (1) if the person is able to appreciate the nature of the charges made against him, and (2) the person is able to consult with his lawyer and rationally assist in the preparation of his defense.  See Okla. Stat. tit. 22, § 1175.3(E). Petitioner complains that Oklahoma law does not require the defendant to have a "rational as well as factual understanding of the proceedings against him" as required by Dusky.  The Court finds, however, that the Oklahoma standard comports with the standard announced in Dusky and was sufficient to satisfy procedural

due process concerns. See Maynard v. Boone 468 F.3d 665 (10th Cir. 2006) (rejecting identical challenge). Under both the Dusky standard and the Oklahoma statute, the accused is required to understand the charges against him and to be able to assist his attorney effectively in defense of the charges against him. Petitioner is not entitled to habeas corpus relief on this claim.

### 2. Issues based on trial proceedings

#### a. *Double jeopardy/double punishment (grounds 1 and 3)*

As his first proposition of error, Petitioner alleges that his first degree murder convictions entered at the conclusion of his second trial are barred by double jeopardy.  Petitioner specifically argues that his felony murder convictions violate double jeopardy principles because he had already been convicted of the underlying felonies when he was retried on the murder charges. In analyzing this claim on direct appeal, the OCCA first determined that the general first degree murder verdicts returned by the jury would be treated as felony murder convictions and then wrote that:

> It is well-established that when an appellate court reverses a conviction and remands the case for a new trial, double jeopardy does not bar re-trial.  This principle known as "continuing jeopardy" is implicit in re-trials after a reversal on appeal and "'has application where criminal proceedings against an accused have not run their full course.'" The Supreme Court has made clear that "[i]nterests supporting the continuing jeopardy principle involve fairness to society, lack of finality, and limited waiver." Since this case concerns a re-trial after a successful appeal, it would appear that double jeopardy does not bar Lambert's felony murder prosecution.

Lambert II, 984 P.2d at 227 (footnotes omitted).  As to Petitioner's specific claim that the underlying felony convictions precluded the subsequent felony murder prosecution, the OCCA further explained that:

> The real question here is whether affirming the robbery convictions in *Lambert I* somehow precludes prosecuting and punishing Lambert for felony murder.  Under Oklahoma law, felony murder and the underlying felony merge into one offense. Traditionally, when this Court reviews convictions for both felony murder and the underlying felony, we sustain the murder convictions and vacate the underlying

18

felony conviction.  Lambert argues that the underlying felony convictions are final and the State cannot now exact a punishment for felony murder based on the same underlying felony.  Lambert contends that to cure the "double punishment" problem here we must set aside the felony-murder convictions rather than the underlying felony convictions.

The Court in *Lambert I* specifically retained jurisdiction over the underlying felony stating that "the trial court can abrogate the conviction for armed robbery in the event Appellant is convicted of felony murder." Thus, we have jurisdiction over the underlying felonies as well as the murder convictions, and we can craft the appropriate remedy to cure any multiple punishment problem. The proper resolution of this problem is to vacate the convictions and sentences for the underlying felonies.

*Lambert II*, 984 P.2d 228-29.

The Double Jeopardy Clause protects defendants against (1) "a second prosecution for the same offense after acquittal," (2) "a second prosecution for the same offense after conviction," and (3) "multiple punishments for the same offense." North Carolina v. Pearce, 395 U.S. 711, 717 (1969), *overruled in part by* Alabama v. Smith, 490 U.S. 794 (1989). Before the clause is implicated, however, some event, such as an acquittal, must terminate the original jeopardy. Richardson v. United States, 468 U.S. 317, 325 (1984).  In United States v. Ball, 163 U.S. 662 (1896), the Supreme Court declared the general rule, still applicable today, that the Double Jeopardy Clause does not bar retrial of a criminal defendant who successfully appeals his sentence. Ball, 163 U.S. at 672. As the Court itself has acknowledged, however, its double jeopardy cases in the century following Ball "can hardly be characterized as models of consistency and clarity." Burks v. United States, 437 U.S. 1, 9 (1978).  In Burks, the Court reaffirmed the general rule set forth in Ball, but overruled many of its prior cases to clarify the distinction between the double jeopardy effects of appellate reversal for insufficient evidence and appellate reversal for trial error. Carving out a narrow exception to the general rule established in Ball, the Court held that "the Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient." Burks, 437 U.S. at 18.

19

The Court has subsequently reemphasized the limited scope of the Burks exception. Tibbs v. Florida, 457 U.S. 31, 40 (1982) ( "[Burks ] . . . carved a narrow exception from the understanding that a defendant who successfully appeals a conviction is subject to retrial.")

In this case, the OCCA remanded Petitioner's murder convictions and death sentences for a new trial based on trial error.  The reversal was not based on a finding of insufficient evidence.  As a result, Petitioner's retrial on the murder charges was not barred by Double Jeopardy.  Furthermore, in Petitioner's first direct appeal, the OCCA specifically authorized the trial court to vacate the armed robbery convictions if Petitioner were convicted of felony murder on retrial.  Lambert I, 888 P.2d at 505.  As noted by the OCCA in resolving Petitioner's direct appeal following his retrial on the murder charges, the trial court's failure to vacate the underlying felonies was error.  Lambert II, 984 P.2d at 229.  The OCCA's remedy for curing the trial court's error, vacation of the underlying felony convictions, does not implicate double jeopardy or any other constitutional concerns. Therefore, Petitioner has not demonstrated that the OCCA's rejection of his double jeopardy challenge was contrary to nor an unreasonable application of Supreme Court precedent.  Under 28 U.S.C. § 2254(d), Petitioner is not entitled to habeas corpus relief on this claim.

In ground 3 of his amended petition, Petitioner asserts a similar claim: that since his arson conviction had already been affirmed by the OCCA, his subsequent prosecution on charges of first degree malice murder was precluded by Okla. Stat. tit. 21, § 11.  As discussed in Part C above, this Court is not concerned with an allegation of erroneous application of state law.  Petitioner argues, however, that the OCCA's adjudication of his double punishment claim resulted in a due process violation. See Dkt. # 58 at 61-62. As noted by Respondent, that claim has never been presented to the OCCA and is unexhausted. Nonetheless, this Court finds that because the claim lacks merit,

consideration of the claim is not precluded by the lack of exhaustion and habeas corpus relief may be denied.  28 U.S.C. § 2254(b)(2).

In support of his unexhausted due process claim, Petitioner specifically states as follows: "[b]ecause Mr. Lambert's arson conviction has already been affirmed, the only appropriate remedy for the violation of § 11(A) described above is to reverse Mr. Lambert's convictions for first degree malice aforethought murder with instructions to dismiss." See Dkt. # 58 at 64.  In resolving Petitioner's § 11 claim, the OCCA determined that since the jury's general verdicts of first degree murder were treated as felony murder convictions, Petitioner's double jeopardy challenge to the prosecution on first degree malice murder charges was moot.  Lambert II, 984 P.2d at 229-30.  The Court agrees.  Given the OCCA's treatment of the jury's general first degree murder verdicts, there are no first degree malice aforethought murder convictions to dismiss, as requested by Petitioner. As a result, Petitioner's claim that the OCCA's resolution of his § 11 claim resulted in a violation of due process lacks merit and shall be denied.  28 U.S.C. § 2254(b)(2).

### b.  Use of unloaded BB gun insufficient to support felony murder (ground 2)

As his second ground of error, Petitioner challenges the sufficiency of the evidence supporting the felony murder convictions. The underlying felony was Robbery With a Dangerous Weapon.  The weapon used by Petitioner was a BB gun. He claims that because the robbery was committed through the use of a BB gun, the robbery does not qualify as one of the enumerated felonies in Okla. Stat. tit. 21, § 701.7(B), and cannot be used to support the felony murder convictions. In support of this claim, Petitioner argues that a BB gun is not a firearm, and that the evidence did not indicate that Petitioner used the BB gun in a manner which could cause death or bodily harm.  He also challenges the jury instructions on felony murder.

21

In rejecting this claim on direct appeal, the OCCA found that Petitioner's "suggested narrowing of robbery with a dangerous weapon that is enumerated in § 701.7" was inconsistent with OCCA case law as well as inconsistent with the intent of the Oklahoma legislature to include robbery with an imitation weapon in both the felony murder statute and the robbery with a dangerous weapon statute. Lambert II, 984 P.2d at 234. The OCCA specifically relied on Powell v. State, 906 P.2d 765, 774 n.8 (Okla. Crim. App. 1995) (finding that the elements of First Degree Felony Murder with the underlying felony of Robbery with a Dangerous Weapon included the element of use of a "loaded/unloaded/*imitation firearm*, or other dangerous weapon"), to conclude that robbery with a dangerous weapon under § 701.7 includes robbery with an imitation firearm. Lambert II, 984 P.2d at 234.

The OCCA also reviewed the trial court's jury instructions on felony murder and determined that Petitioner's objection to the language contained in the robbery definition to be "consistent with, although not identical to, footnote 8 of Powell v. State . . . ." Lambert II, 984 P.2d at 235. As a result, the OCCA rejected Petitioner's contention that the trial court should have included an instruction defining firearms and found the trial court's instructions were proper. Id.

Although Petitioner describes this ground of error as a challenge to the sufficiency of the evidence, resolution of the issues raised actually turns on interpretation of state law. As discussed in Part C above, habeas corpus relief is generally not available for claims based on alleged errors of state law. Estelle v. McGuire, 502 U.S. 62, 67-8 (1991) (emphasizing that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions). Instead, when conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. Id. A petitioner may be entitled to habeas

corpus relief, however, if he shows that the alleged violation of state law resulted in a denial of due process. See Aycox v. Lytle, 196 F.3d 1174, 1179-80 (10th Cir. 1999) (citing Hicks v. Oklahoma, 447 U.S. 343, 346 (1980)). "Moreover, the deprivation occasioned by the state's failure to follow its own law must be 'arbitrary in the constitutional sense'; that is, it must shock the judicial conscience." Aycox, 196 F.3d at 1180.

In addition, a habeas corpus petitioner "bears a 'great burden . . . when [he] seeks to collaterally attack a state court judgment based on an erroneous jury instruction.'" Lujan v. Tansy, 2 F.3d 1031, 1035 (10th Cir. 1993) (quoting Hunter v. New Mexico, 916 F.2d 595, 598 (10th Cir. 1990)). "[E]rrors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, 'unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law.'" Nguyen v. Reynolds, 131 F.3d 1340, 1357 (10th Cir. 1997) (quoting Long v. Smith, 663 F.2d 18, 23 (6th Cir. 1981)); see also Maes v. Thomas, 46 F.3d 979, 984 (10th Cir. 1995). "The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." Henderson v. Kibbe, 431 U.S. 145, 154 (1977). "The question in such a collateral proceeding is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process,' not merely whether 'the instruction is undesirable, erroneous, or even universally condemned.'" Id. (quoting Cupp v. Naughten, 414 U.S. 141, 146, 147 (1973)).

Petitioner's ground two claim challenging the interpretation of Oklahoma law is not cognizable in this federal habeas corpus proceeding and should be denied on that basis. Furthermore, Petitioner has not demonstrated that the allegedly erroneous interpretation of state law resulted in

a denial of due process nor has he shown that his trial was rendered fundamentally unfair by the instructions issued in this case.  The Court finds that the OCCA's adjudication of this claim was neither contrary to or an unreasonable application of clearly established Federal law, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at trial.  Petitioner is not entitled to habeas relief on this claim.  28 U.S.C. § 2254(d).

### c. Failure to instruct on second-degree felony murder (ground 8)

As his eighth proposition of error, Petitioner asserts that the trial court erred in failing to instruct the jury on second-degree felony murder since the evidence demonstrated that Petitioner used a BB gun to commit the underlying felony offense, robbery with a dangerous weapon. Petitioner raised this claim on direct appeal.  Because Petitioner did not request the issuance of a second degree felony murder instruction, the OCCA reviewed for plain error and found as follows:

> . . . Lambert used a BB gun. The BB gun looked like a real weapon and was designed to place the victims in fear.  Hain used a knife, which is clearly a dangerous weapon. Both the BB gun, as used here, and the knife, fall under 21 O.S.1981, § 801. Lambert's actions fit squarely under § 801. A finding that the robbery was not accomplished by force or fear was not warranted by the evidence. The trial court did not err in failing to sua sponte give a second degree felony murder instruction.

Lambert II, 984 P.2d at 237 (footnotes and citations omitted).

Under Oklahoma law, a person commits first degree felony murder when he "takes the life of a human being during, or if the death of a human being results from, the commission or attempted commission of [certain listed felonies, including] ... robbery with a dangerous weapon...." Okla. Stat. tit. 21, § 701.7(B). Homicide is murder in the second degree when it is "perpetrated by a person engaged in the commission of any felony other than the unlawful acts" set out in § 701.7. 21 Okla. Stat. tit. 21, § 701.8(2). Second degree felony murder encompasses murder committed during a robbery by force or fear, which is not an enumerated felony in the first degree murder statute. See

24

Brown v. Sirmons, 515 F.3d 1072, 1086 (Okla. Crim. App. 2008).  According to the Tenth Circuit, "once the state has established that a defendant used a dangerous weapon in the course of a robbery that results in death, the offense of second degree murder is no longer an option under Oklahoma law." Wilson v. Sirmons, 536 F.3d 1064, 1103-04 (10th Cir. 2008) (citations omitted).

As indicated above, the OCCA determined that both the BB gun used by Petitioner, as well as the knife used by Petitioner's co-defendant Hain, were dangerous weapons. Under 28 U.S.C. § 2254(e)(1), that finding of fact is afforded a presumption of correctness unless it is rebutted by "clear and convincing evidence," a high burden which Petitioner has not met. As a result, the only evidence was that the underlying felony was robbery with a dangerous weapon, not robbery by force or fear, and the trial court did not err in failing to instruct the jury on the lesser included offense of second degree felony murder. The OCCA's decision was not contrary to federal law, nor was it an unreasonable application of the facts to that law. See Brown, 515 F.3d at 1086.  Petitioner is not entitled to habeas relief on this claim.

### d.  Erroneous admission of confession at trial (ground 4)

As his fourth proposition of error, Petitioner complains that the State failed to prove that he knowingly and intelligently waived his constitutional rights on October 12, 1987, prior to allowing the police to videotape his confession.  As a result, he claims that the admission of the videotaped confession in the competency trial and subsequently at trial violated the Sixth, Eighth, and Fourteenth Amendments. On direct appeal, the OCCA noted that the parties waived holding a new Jackson v. Denno hearing and asked the trial court to review transcripts of earlier proceedings.  The OCCA then relied on its determination in Lambert I and held that the trial court did not err in admitting the confession at trial. Lambert II, 984 P.2d at 235.

During the retrospective competency trial held in June, 1991, the trial court conducted a Jackson v. Denno hearing, see Tr. Trans. Vol. II, dated June 25, 1991, to determine whether Petitioner's confession was voluntary and admissible.  At that hearing, Officer Bruce Duncan testified that after Petitioner was arrested on October 12, 1987, he and Sgt. Steve Steele interviewed Petitioner at the Tulsa Police Department.  Id. at 314-16. The first thing they did was read Petitioner his Miranda rights.  Id. at 316. Officer Duncan read the rights to Petitioner off of his card and asked Petitioner if he understood those rights.  Id. at 318. He said he did.  Id. Officer Duncan testified that he went over the Miranda warnings line by line and that after each sentence, he looked at Petitioner to see if he had any questions.  Id. at 326. Petitioner never gave any indication, either by facial expression or verbally, that he did not understand.  Id. Petitioner signed a written statement and waiver of those rights.  Id. at 319. Dr. Thomas Goodman testified at the Jackson v. Denno hearing that Petitioner knowingly, intelligently, and voluntarily gave the statement on October 12, 1987. Id. at 331.  According to Dr. Goodman, the videotape demonstrates that Petitioner talked freely, behaved appropriately, volunteered most of the information, did not appear to be frightened, and that his emotional responses were appropriate.  Id. at 332.

There was no suggestion that the police used violence or improper threats or promises to elicit petitioner's inculpatory statements. See Bram v. United States, 168 U.S. 532, 542-43 (1897) (holding confession may not be obtained by threats or violence, direct or implied promises, or improper influence); Malloy v. Hogan, 378 U.S. 1, 7 (1964) (same).  Further, petitioner has not alleged any additional facts which, if proven true, would require the conclusion that his statements were made involuntarily.  The Court concludes that Petitioner has failed to establish that the OCCA's determinations that Petitioner voluntarily waived his rights under Miranda and the

26

videotape was properly admitted at trial were contrary to or an unreasonable application of Supreme Court law.  He is not entitled to relief under 28 U.S.C. § 2254(d).

### e. *Refusal to declare a mistrial (ground 5)*

As his fifth ground of error, Petitioner complains that the trial court committed reversible error in refusing to declare a mistrial based on prosecutorial misconduct during examination of State's rebuttal witness Dr. Thomas Goodman. Prior to Dr. Goodman's testimony, the trial court held a conference in chambers to discuss the anticipated testimony.  Dr. Goodman had testified at Petitioner's first trial and at his competency trials and made references to other crimes committed by Petitioner. The trial court sustained defense counsel's request to limit Dr. Goodman's descriptions of past conduct or criminal charges to "problems" or "incidents." (Tr. Trans. at 656). During his testimony, Dr. Goodman stated that Petitioner "had some other problems at school, disciplinary problems, stealing, lying . . ." (Tr. Trans. at 674).  At the bench, defense counsel objected to Dr. Goodman's testimony and requested a mistrial. The trial court denied the request for a mistrial. The prosecutor continued with his examination of Dr. Goodman. As he proceeded to review Petitioner's records chronologically, Dr. Goodman testified that when Petitioner "was in the first grade he was accused of trying to force himself on a little girl sexually.  He tried to do that to his niece when he was ten or eleven years old." (Tr. Trans. at 677).  Defense counsel again moved for a mistrial and asked for sanctions. Id. The trial court overruled the request for a mistrial, and stated that defense counsel's objection was not well taken since the defense's mental health expert, Dr. Phillip Murphy, had already described the same incident to the jury. Id. Petitioner also complains that Dr. Goodman "proceeded to inject" other crimes and bad acts into his testimony, including a description of an incident at Creek County Jail where Petitioner started a fire in his cell

27

and yelled "suicide" and "burn, burn." <u>Id.</u> at 692.  Defense counsel's request for a mistrial was overruled by the trial court judge.  <u>Id.</u>

Based on the trial testimony of Dr. Goodman, Petitioner complains in his amended complaint that Dr. Goodman improperly referred to evidence of other crimes and violated the prohibition against evidentiary harpoons. Petitioner raised this claim on direct appeal.  The OCCA determined that:

> [t]he trial court had limited Dr. Goodman's testimony regarding other crimes, and it is evident that Dr. Goodman referred to other crimes or bad acts in contravention to the court's instructions.  However, these references were brief and relatively innocuous.  Under the circumstances, the error is harmless.

<u>Lambert II</u>, 984 P.2d at 236.

Petitioner also alleges that the trial court improperly admitted evidence of other crimes during the testimony of witness Thomas White. Mr. White testified that the BB gun used by Petitioner to rob the victims used to belong to his grandmother, but he "heard it was stolen," and his grandmother had "accused me of stealing it but I didn't."  (Tr. Trans. at 422-23).  The trial court overruled defense counsel's objection.  <u>Id.</u> at 423.  On direct appeal, the OCCA determined that "[t]his evidence was irrelevant other crimes evidence, and it should not have been elicited. However, again we must find that in light of the overwhelming evidence of guilt, the error was harmless."  <u>Lambert II</u>, 984 P.2d at 236.

"[I]n a habeas proceeding . . . 'we will not question the evidentiary . . . rulings of the state court unless [the petitioner] can show that, because of the court's actions, his trial, as a whole, was rendered fundamentally unfair.'"  <u>Maes v. Thomas</u>, 46 F.3d 979, 987 (10th Cir. 1995) (quoting <u>Tapia v. Tansy</u>, 926 F.2d 1554, 1557 (10th Cir. 1991)). "[W]e approach the fundamental fairness analysis with 'considerable self-restraint.'"  <u>Jackson v. Shanks</u>, 143 F.3d 1313, 1322 (10th Cir. 1998)

28

(quoting United States v. Rivera, 900 F.2d 1462, 1477 (10th Cir. 1990) (*en banc*)). A proceeding is fundamentally unfair under the Due Process Clause if it is "shocking to the universal sense of justice." United States v. Russell, 411 U.S. 423, 432 (1973).

Petitioner's claims challenging the trial court's denial of a mistrial based on Dr. Goodman's testimony concerning "other crimes evidence" and the trial court's ruling on defense counsel's objection to Thomas White's testimony are not cognizable in this habeas corpus proceeding unless Petitioner demonstrates that the rulings rendered his trial fundamentally unfair. Welch v. Sirmons, 451 F.3d 675, 692 (10th Cir. 2006) (quoting Payne v. Tennessee, 501 U.S. 808, 825 (1991)). Petitioner complains that he was prejudiced by the testimony. Viewing the trial as a whole, the Court finds that the testimony of Dr. Goodman did not serve to deprive Petitioner of the basic guarantees of due process. See Scrivner v. Tansy, 68 F.3d 1234, 1239-40 (10th Cir. 1995). Nor was his trial rendered fundamentally unfair as a result of the trial court's rulings described in ground five. Furthermore, even if the testimony concerning other crimes was erroneously admitted, the error was harmless. In Brecht v. Abrahamson, 507 U.S. 619 (1993), the Supreme Court stated that habeas relief is improper unless the error had a "substantial and injurious effect or influence in determining the jury's verdict." Id. at 623 (internal quotation marks omitted). The evidence of guilt in this case was overwhelming and included Petitioner's videotaped confession. As a result, any error in admission of the "other crimes evidence" did not have a "substantial and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 623. Based on Brecht, the Court finds Petitioner is not entitled to habeas corpus relief on this claim.

### *f.  Erroneous admission of prejudicial evidence (ground 7)*

In ground 7, Petitioner challenges the admission of certain evidence.  Specifically, Petitioner

complains that the admissions of repetitive descriptions of the victims' bodies and the crime scene,

of gruesome and irrelevant photographs, and of the testimony of one victim's family member during

the guilt/innocence stage were all prejudicial. Petitioner raised this claim on direct appeal.  The

OCCA held as follows:

> [w]ithout a doubt, the murders and the method of death in this case were
> horrible and of necessity the descriptions and photographs of this crime capture some
> of this horror.  It is well established that "[t]he test for admissibility of a photograph
> is not whether it is gruesome or inflammatory, but whether its probative value is
> substantially outweighed by the danger of unfair prejudice." Moreover, "[t]he
> probative value of photographs of murder victims can be manifested in numerous
> ways, including showing the nature, extent and location of wounds, establishing the
> corpus delicti, depicting the crime scene, and corroborating the medical examiner's
> testimony."
>
> At issue here are Exhibits G1 and G2, which were black and white
> photographs of the victims as they were found in the trunk of the car . . . the
> photographs, as well as the witnesses' testimony, were relevant in depicting the
> crime scene and corroborating the medical examiner.  Lambert also objects to
> Exhibits J, R and S, none of which depicted the victims. The trial court did not abuse
> its discretion in admitting these photographs. Similarly, allowing the jurors to view
> the medical examiner's report, which was relevant to the cause of death, was not an
> abuse of discretion. Finally, although several witnesses related what they found at
> the crime scene, the testimony was not unduly prejudicial, repetitive or unjustified
> . . .    Lambert also complains about the State's calling Laura Sanders' mother to
> testify during first stage.  Mrs. Sanders identified the sleeping bag that was found
> under Sanders' burned car. Lambert objected to this evidence at trial and offered to
> stipulate that the sleeping bag belonged to Sanders' brother.
>
> . . . Mrs. Sanders' testimony was relatively straightforward and unemotional.
> She did not testify in an improper or inappropriate manner. Moreover, the State was
> not obligated to accept Lambert's offer to stipulate to the ownership of the sleeping
> bag. The evidence was relevant and no error occurred in allowing her to testify on
> this limited issue.

Lambert II, 984 P.2d at 236-37.

As discussed above, a habeas petitioner is not entitled to relief on a challenge to "'the evidentiary . . . rulings of the state court unless [the petitioner] can show that, because of the court's actions, his trial, as a whole, was rendered fundamentally unfair.'" Maes v. Thomas, 46 F.3d 979, 987 (10th Cir. 1995) (quoting Tapia v. Tansy, 926 F.2d 1554, 1557 (10th Cir. 1991)). Petitioner has not made the necessary showing in this case. The evidence complained of was neither repetitive nor unduly prejudicial. Petitioner's request for habeas corpus relief on this ground shall be denied.

### g. Ineffective assistance of counsel (ground 6)

As his sixth ground for relief, Petitioner contends that his trial counsel provided ineffective assistance in failing to request a change of venue. Citing Strickland v. Washington, 466 U.S. 668 (1984), the OCCA rejected this claim on direct appeal, finding as follows:

> [t]he decision to not seek a change of venue under these circumstances was a reasonable, strategic decision and it is likely that had the issue been raised, Lambert would have lost on the merits at both the trial and appellate levels. Moreover, many of the potential jurors had not heard of Lambert's case. Those jurors who had heard of the case affirmed that they could put aside that information and fairly and objectively sit in judgment.

Lambert II, 984 P.2d at 232.

Petitioner is not entitled to habeas corpus relief on his claim of ineffective assistance of counsel unless he establishes that the OCCA's adjudication of the claim was an unreasonable application of Supreme Court precedent. Petitioner must demonstrate that his counsel's performance was deficient and that the deficient performance was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). Petitioner must establish the first prong by showing that his counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id.

31

at 688.  In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689.  To establish the second prong, Petitioner must show that this deficient performance prejudiced the defense to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Sallahdin v. Gibson, 275 F.3d 1211, 1235 (10th Cir. 2002); Boyd v. Ward, 179 F.3d 904, 914 (10th Cir. 1999).  Failure to establish either prong of the Strickland standard will result in denial of relief.  Strickland, 466 U.S. at 697.

To establish ineffective assistance for failing to request a change of venue, petitioner must show, at a minimum, that the trial court would have or should have granted a change of venue motion. This, in turn, requires him to show actual or presumed prejudice on the part of jurors. See Hale v. Gibson, 227 F.3d 1298, 1332 (10th Cir. 2000); Meeks v. Moore, 216 F.3d 951, 961 (11th Cir. 2000); see also Estes v. Texas, 381 U.S. 532, 542-43 (1965). Actual prejudice requires showing that one or more jurors believed before trial that petitioner was guilty and that they could not set these pre-formed opinions aside at trial. Id. Presumed prejudice requires showing that "an irrepressibly hostile attitude pervaded the community." Hale, 227 F.3d at 1332 (quotation omitted).

In this case, Petitioner points to no actual hostility or impartiality by the jurors and he does not allege actual prejudice. Petitioner's allegations of presumed prejudice, based on pretrial

newspaper articles,[6] do not approach the high standard necessary to warrant a change in venue. See Hale, 227 F.3d at 1332 ("Simply showing that all the potential jurors knew about the case and that there was extensive pretrial publicity will not suffice to demonstrate that an irrepressibly hostile attitude pervaded the community." (quotation omitted)). Upon review of the trial transcript, the Court finds no evidence of a fundamentally unfair proceeding. Fundamentally unfair circumstances may be indicated by an inflammatory atmosphere within the community or courtroom, by specific statements of jurors, or by the difficulty with which an impartial panel was selected. See Brecheen v. Reynolds, 41 F.3d 1343, 1351 (10th Cir. 1994) (citing Murphy v. Florida, 421 U.S. 794, 800-03 (1975)).  Nothing in the trial record suggests that Petitioner was in any way deprived of the solemn and sober proceeding to which he was entitled. Although several of the jurors stated they had previous knowledge of the case through media exposure, see, e.g., Tr. Trans. at 170, 194, 212, 216, they also indicated either that they did not remember much or that they could decide the case based on the evidence presented in court. The Court finds Petitioner has failed to demonstrate presumed prejudice resulting from his counsel's failure to move for a change of venue.  Petitioner has failed to demonstrate entitlement to habeas corpus relief under 28 U.S.C. § 2254(d).

### h.  Failure to allow individual voir dire during jury selection (ground 9)

As his ninth ground of error, Petitioner asserts that the trial court's refusal to allow individual voir dire during jury selection was an abuse of discretion.  The OCCA refused to grant relief on this

---

[6]     In support of this claim, Petitioner provides an Appendix to his amended petition containing numerous newspaper articles published during the long history of Petitioner's case in the state courts, along with affidavits.  See Dkt. # 58, Amended Appendix to Amended Petition for a Writ of Habeas Corpus.

claim, finding that Petitioner had "overstate[d] the pretrial publicity," had failed to demonstrate that any juror was impartial, or that the trial court had abused its discretion.  Lambert II, 984 P.2d at 232.

In affirming the denial of habeas relief on a nearly identical claim, the Tenth Circuit Court of Appeals has determined that:

> [a] defendant's right to an impartial jury includes the right to an adequate voir dire to identify unqualified jurors. See Morgan v. Illinois, 504 U.S. 719, 729, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992). There is no absolute constitutional right to individual voir dire in capital cases, Trujillo v. Sullivan, 815 F.2d 597, 606-07 (10th Cir. 1987); McCorquodale v. Balkcom, 721 F.2d 1493, 1496 (11th Cir. 1983) (en banc), but the method of voir dire must comport with due process requirements, Trujillo, 815 F.2d at 607. "An exercise of discretion to deny sequestered voir dire ... may comport quite easily with due process under the specific circumstances, whereas that same exercise of discretion may offend notions of fairness" in another setting. Id. "There may be a case where en masse death-qualifying voir dire may be so egregious and may so taint the jury that the process denies the defendant his constitutional right to an impartial jury." Id. We might be concerned, for example, if a juror stated in front of other venire members that he was aware that the defendant had been arrested in another state for some heinous crime; Byrd v. Armontrout, 880 F.2d 1, 11 (8th Cir. 1989) (finding, however, that this questioning was harmless error); or if a juror expressed his opinion on guilt or innocence, formed because of pre-trial publicity, thereby tainting the entire venire, United States v. Tegzes, 715 F.2d 505, 508 (11th Cir. 1983) (same).

Wilson v. Sirmons, 536 F.3d 1064, 1098 (10th Cir. 2008).

Petitioner in this case has failed to show that his voir dire was so "egregious" that it violated his due process rights.  Trujillo, 815 F.2d at 607.  As discussed above, several of the jurors stated that they had knowledge of the case as a result of media coverage.  However, none stated an opinion as to guilt or innocence formed because of the media coverage nor do the jurors' voir dire responses raise a concern of possible tainting of the entire venire. Petitioner has not shown any evidence of prejudice resulting from the voir dire process. In the absence of any evidence of prejudice, the Court finds that the decision of the OCCA was not contrary to, or an unreasonable application of, clearly established law.  Petitioner is not entitled to habeas relief under 28 U.S.C. § 2254(d).

### i.  *Cumulative error (ground 15)*

As his final proposition of error, Petitioner complains that the accumulation of errors in this case violated his right to due process.  The OCCA considered Petitioner's claim that cumulative error warrants relief, stating that "[w]e disagree and decline to grant relief on this basis." Lambert II, 984 P.2d at 239.

The Tenth Circuit Court of Appeals has repeatedly held that cumulative error analysis is applicable only where there are two or more actual errors. Workman v. Mullin, 342 F.3d 1100, 1116 (10th Cir. 2003). Cumulative impact of non-errors is not part of the analysis. Le v. Mullin, 311 F.3d 1002, 1023 (10th Cir. 2002) (citing United States v. Rivera, 900 F.2d 1462, 1471 (10th Cir. 1990)). Having rejected each of Petitioner's habeas claims, the Court finds no basis for a cumulative error analysis. The OCCA's resolution of Petitioner's cumulative error claim was not an unreasonable application of federal law.  Petitioner is not entitled to relief on this ground.

### CONCLUSION

After careful review of the record in this case, the Court concludes that the Petitioner has not established that he is in custody in violation of the Constitution or laws or treaties of the United States.  His amended petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED that:**

1. The Clerk shall substitute Randy Workman as Respondent in place of Marty Sirmons.

2. The amended petition for a writ of habeas corpus (Dkt. # 58) is **denied**.

3. The original petition (Dkt. # 16) is **declared moot**.

4. A separate judgment shall be entered in this matter.

**DATED this 2nd day of July, 2009.**

TERENCE KERN
UNITED STATES DISTRICT JUDGE